IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAKEITHA TURNER,<br><br>  Plaintiff,<br><br>v.<br><br>FISERV SOLUTIONS LLC,<br><br>  Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

COMES NOW Lakeitha Turner ("Plaintiff"), by and through his undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

**NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Fiserv Solutions LLC ("Defendant") for violations of her rights under the Americans with Disabilities Act, as amended, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964.

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §1981, venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII and the ADA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 5, 2025.

5.

Plaintiff received her Notice of Right to Sue from the EEOC on that Charge on July 17, 2025.

## **PARTIES**

6.

Plaintiff is a citizen of the United States of America born and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the Section 1981, Title VII, and the ADA.  Defendant is now and, at all times relevant hereto, has been a for-profit entity engaged in an industry affecting commerce. During all times relevant hereto, Defendant had employed twenty (15) or more employees for the requisite duration under Title VII, the ADA, and Section 1981.

9.

Defendant may be served with process via its Registered Agent, Prentice Hall Corporation, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## FACTUAL ALLEGATIONS

10.

Plaintiff was hired by Defendant as a Payroll Tax Compliance Manager in or about February 2023.

11.

Plaintiff is black.

12.

Before Plaintiff's hiring, she had been diagnosed with PTSD, anxiety, and a traumatic brain injury from her service in the military.

13.

Plaintiff's PTSD, anxiety, and traumatic brain injury negatively affect her, among other things, in the major life activities of focusing, communicating, and concentrating,

14.

Plaintiff's PTSD, anxiety, and traumatic brain injury also negatively affect her neurological systems.

15.

Plaintiff's PTSD, anxiety, and traumatic brain are disabilities within the meaning of the Americans with Disabilities Act, as amended.

16.

During Plaintiff's employment, there was an Analyst under her, Linda Hacbert, who worked in Milwaukee, Wisconsin.

17.

Hacbart would sabotage Plaintiff's work by, for example, falsely saying things were not correct with her work, changing information Plaintiff put into work documents and saying it was Plaintiff's fault, tag Plaintiff in group chats and speak badly about her, and tell other employees and subordinates that she did not like Plaintiff and that she was going to get her fired.

18.

These things would happen approximately twice a week until the end of Plaintiff's employment.

19.

Hacbart would also go to Plaintiff's manager, Katy Adams, and make up lies about her performance.

20.

In or about October 2024, Plaintiff made an anonymous report about Hacbart's harassment to Human Resources.

5

21.

At some point after October 2024, another employee from the Milwaukee office told Plaintiff that Hacbart would consistently reference her skin color when talking about her.

22.

This employee also informed Plaintiff that Hacbart had similar issues with other African Americans and that it appeared she treated them the same way she treated Plaintiff.

23.

Hacbart would sometimes also make racially charged comments to Plaintiff, including, for example, saying "I know you need to feed all them kids" or saying she had been "sweating like a slave."

24.

As a result, when Plaintiff was called as a witness in the investigation regarding her report in or about October or November 2024, Plaintiff came forward and identified herself as the individual who had complained.

25.

During that meeting, Plaintiff reported to the Human Resources Representatives present that she believed that Hacbart's treatment and harassment

of her was racially based and gave them examples of why she believed that to be the case. She also mentioned that Hacbart's harassment was still continuing.

26.

Hacbart continued to harass Plaintiff in the manner described above.

27.

In December 2024, Plaintiff came to Adams and complained that she believed that Hacbart was a racist and that that was why she was lying about her performance and bullying her.

28.

Adams told Plaintiff that she did not think the treatment was race-based and told her that she believed that that was just how Hacbart was.

29.

Adams did not deny that Hacbart was engaging in the behavior of which Plaintiff was complaining.

30.

Prior to this meeting, Plaintiff had informed Adams of her disabilities.

31.

When Plaintiff was telling Adams about how much stress the Hacbart situation was causing her and how it was affecting her disabilities, Adams told

7

Plaintiff she should apply for an accommodation and that she was surprised Plaintiff had lasted this long with Hacbart's harassment without quitting.

32.

Plaintiff then applied for PTSD and anxiety related accommodations to have a limited amount of time working in the office and submitted that application to Defendant's third party vendor, Alight.

33.

Plaintiff's accommodation was approved, but afterwards, Adams would make comments to her that she wanted Plaintiff to go back and reassess her accommodation because she (Adams) wanted Plaintiff to come into the office more.

34.

In or about January 2025, Plaintiff responded to such a comment by telling Adams she was trying to come into the office more and Adams said that they would need to "cross that bridge soon" and figure out a way to get Plaintiff to come back to work full time in person.

35.

However, Alight then extended Plaintiff's disability accommodation.

36.

In or about February 2025, Plaintiff was notified that the investigation into her race based complaints had been closed and that nothing malicious had been found.

37.

Within a week, Plaintiff received a bonus of $4,500 from Adams.

38.

Then, on March 11, 2025, Plaintiff was suddenly notified that her accommodation had been cancelled.

39.

One day later, on March 12, 2025, Adams terminated Plaintiff, telling her that she had lied about not attaching a document to a case file and about her military history (which was related to her disability), which was not true.

40.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. individuals that had not reported discriminatory harassment, who were not disabled, and who had not applied for and taken disability-related

accommodations. Despite Plaintiff's complaints, Defendant did not attempt to rectify the situation, and instead terminated Plaintiff's employment because of his complaints.

**CLAIMS FOR RELIEF**

**COUNTS I & II: RETALIATION AND DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED**

41.

Plaintiff repeats and re-alleges the allegations contained in paragraphs 10-40 as if set forth fully herein.

42.

Section 102 of the ADA protects qualified individuals, including Plaintiff, from adverse employment actions based on a known disability of the employee.

43.

At times relevant to this action, Plaintiff was a "qualified individual" as that term is defined by the ADA.

44.

At times relevant to this action, Plaintiff has been an individual with a disability as that term has been defined by the ADA.

45.

At times relevant to this action, Defendant and all individuals involved in the decision to terminate Plaintiff were aware of Plaintiff's accommodations requests and disabilities.

46.

Plaintiff engaged in protected activity under the ADA when she requested and used accommodations for her disabiliites.

47.

At all times relevant, Plaintiff could perform the essential functions of her position with or without a reasonable accommodation.

48.

Plaintiff was terminated for her protected activity.

49.

Plaintiff was terminated because she is disabled, was perceived as disabed, or because she had a history of having a disabiliy.

50.

In terminating Plaintiff because of her protected activity, Defendant violated Plaintiff's rights under the ADA, entitling her to all appropriate relief thereunder.

51.

In terminating Plaintiff because of her disability, Defendant violated Plaintiff's rights under the ADA, entitling her to all appropriate relief thereunder.

52.

As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

53.

Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights. Plaintiff seeks punitive damages as a result of Defendant's violations of the ADA.

### COUNTS III AND IV: RETALIATION IN VIOLATION OF TITLE VII AND SECTION 1981

54.

Plaintiff repeats and re-alleges the allegations contained in paragraphs 10-40 as if set forth fully herein.

55.

Section 1981 and Title VII protect employees from retaliatory adverse employment actions such as termination on the basis of protected activity under Section 1981 and Title VII.

56.

At times relevant to this action, Defendant and all individuals involved in the decision to terminate Plaintiff were aware of Plaintiff's reports of race based harassment.

57.

Plaintiff engaged in protected activity under the Section 1981 and Title VII when she reported race based harassment.

58.

Plaintiff was terminated for her protected activity.

59.

In terminating Plaintiff because of her protected activity, Defendant violated Plaintiff's rights under the Title VII and Section 1981, entitling her to all appropriate relief thereunder.

60.

As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

61.

Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights. Plaintiff seeks punitive damages as a result of Defendant's violations of the Title VII and Section 1981.

**WHEREFORE**, Plaintiff judgment as follows:

(a)    General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)    Special damages for lost wages and benefits and prejudgment interest thereon;

(c)    Punitive damages;

(d)    Reasonable attorney's fees and expenses of litigation;

(e)    Trial by jury as to all issues;

(f)    Prejudgment interest at the rate allowed by law;

(g)    Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)  Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)  All other relief to which she may be entitled.

This 16th day of September, 2025.

**THE WORKERS' FIRM**

/s/ V. Severin Roberts, Esq
V. Severin Roberts
Georgia Bar No. 940504
Patrick Reid
Georgia Bar No. 888769
The Workers' Firm
7000 Central Parkway, Suite 1000
Atlanta, GA 30328
(404)-382-9660
severin@theworkersfirm.com
patrick@theworkersfirm.com

Counsel for Plaintiff